```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA HOLLEY,                   :   CIVIL ACTION
                                :   NO. 11-2444
     Plaintiff,                 :
                                :
     v.                         :
                                :
ERICKSON LIVING, et al.,        :
                                :
     Defendants.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              May 18, 2012

## I.   INTRODUCTION

Plaintiff Linda Holley ("Plaintiff") brings this Fair Labor Standards Act ("FLSA") action against Defendants Erickson Living and Erickson Living at Ann's Choice (collectively, "Defendants"). Plaintiff, on behalf of herself and those similarly situated, alleges that Defendants violated the FLSA by requiring employees to perform work without proper compensation before their shifts began and during their lunch breaks. To that end, Plaintiff proposes the certification of two sub-classes: (1) a pre-shift work subgroup including all non-exempt persons employed by Defendants between March 30, 2008, and the present; and (2) a lunch-break work subgroup including all non-exempt persons employed by Defendants between March 30, 2008, and the present.

Currently before the Court is Plaintiff's Motion Authorizing Notice to Similarly Situated Persons. For the reasons that follow, the Court will deny Plaintiff's Motion without prejudice.

**II.   BACKGROUND**

Defendant-Erikson Living develops and manages continuing care retirement communities. Relevant here, Defendant-Erikson Living manages the Ann's Choice and Maris Grove facilities. Ann's Choice is a senior living community located in Bucks County, Pennsylvania. Maris is a retirement community located in Glenn Mills, Pennsylvania. Combined, Ann's Choice and Maris have approximately 167 non-exempt employment positions. Plaintiff worked at Ann's Choice as a nurse from November 2007 to September 2010. Cynthia Wilcox, a putative opt-in Plaintiff, also worked at Ann's Choice as a nurse from September 2007 to April 2009.[1]  It is undisputed that Plaintiff

---

[1]   Plaintiff, in her Motion, contends that Cynthia Wilcox is an opt-in Plaintiff. Wilcox consented to opt in to this action as required by 29 U.S.C. § 216(b) on September 20, 2011. See ECF No. 13. Nonetheless, she is still not a plaintiff in this case in the sense that any judgment cannot bind Wilcox until the Court determines that Wilcox, and other potential opt-in plaintiffs, are similarly situated. See 29 U.S.C. § 216(b) (2006); see also McElmurry v. U.S. Bank Nat'l Ass'n, 495 F.3d 1136, 1139 (9th Cir. 2007) ("[U]nlike a class action, only those plaintiffs who expressly join the collective action are bound by its results."). Put another way, while Wilcox may have opted in

and Wilcox were non-exempt employees and that the alleged FLSA violations only relate to non-exempt employees.

Plaintiff's Complaint avers two of Defendants' alleged timekeeping policies violate the FLSA. First, Defendants failed to compensate Plaintiff for pre-shift work. Defendants' standard work period for non-exempt employees was a forty-hour work week, consisting of eight hours a day of paid time. All non-exempt employees had to clock in and clock out at the beginning and end for their shifts. Defendants used the "Kronos" timekeeping system to record employees' work hours. Plaintiff contends that the Kronos system at Ann's Choice only allowed employees to clock in during a seven-minute window before an employee's scheduled shift time. If an employee was late to work, the Kronos system prevented the employee from clocking in.

This resulted in two problems. One, employees arrived at work well before their scheduled shift. Two, if the employee was late, they performed work while not clocked in that resulted in under payment of wages. In particular, Plaintiff contends that when she arrived at work early Defendants required her to perform work duties before the start of her shift including, "receiving pass down instructions, collecting or checking

---

without court-ordered notice, she is still not a plaintiff in this case until the Court determines she is similarly situated.

equipment, answering phone calls, providing patient care, interacting with visitors[,] and other things."  Pl.'s Br. in Supp. of Mot. for Authorizing Notice to Similarly Situated Persons 4, ECF No. 16 [hereinafter Pl.'s Br.].  Plaintiff contends that she performed about ten to twenty minutes of this pre-shift work twice a week.  See Holley Decl. ¶ 8, Pl.'s Br. Ex. A.  Opt-in Plaintiff Wilcox contends that she performed about ten to twenty minutes of this pre-shift work three times a week.  See Wilcox Decl. ¶ 8, Pl.'s Br. Ex. B.  Plaintiff further contends that Defendants knew of this pre-shift work, but did nothing to track the instances of pre-shift work or compensate Plaintiff for such work.  Finally, Plaintiff and Wilcox contend, "Through their personal observations of, and discussions with, their co-workers during the Class Period, Plaintiffs believe that other Class members were subjected to the same pre-shift work policies and practices and affected the same way by them."  Pl.'s Br. 5.

Second, Defendants failed to compensate Plaintiff for meal-break work.  Plaintiff contends that all Defendants' employees were governed by a common meal-break policy.  This policy provided that all "[e]mployees scheduled to work a standard eight and one-half hour shift are allowed . . . one thirty minute unpaid meal break."  Hours of Work and Paydays, Pl.'s Br. Ex. C.  Plaintiff contends that Defendants configured

4

the Kronos system to automatically deduct thirty minutes from an employee's daily total work hours to result in a total of eight paid hours, regardless of whether an employee worked during his meal break.  Plaintiff contends that she worked during her meal break at least five times per week during the class period.  Wilcox contends that she worked during her meal break about four times per week during the class period.  Defendants allegedly knew about this unpaid work and did nothing to track this time.[2]

In an effort to recoup compensation for this pre-shift and meal-break work, Plaintiff filed this suit on April 8, 2011.  The Court ordered completion of discovery regarding conditional certification by October 15, 2011.  See First Scheduling Order, ECF No. 11.  After close of this discovery period, Plaintiff moved for conditional certification of her collective action.  ECF No. 16.  Therein, Plaintiff moved the Court to order notice to all non-exempt, full-time employees of Ann's Choice and Maris Grove from March 30, 2008, to the present, along with the last four digits of each employee's Social Security number.

---

[2] Plaintiff admits that Defendants had a policy for reimbursing employees for this meal-break work.  See Timecard Change/Missed Punch/Missed Meal Break, Defs.' Resp. in Opp. to Pl.'s Mot. Ex. I, ECF No. 18 [hereinafter Defs.' Br.].  Plaintiff contends, however, that Defendants "routinely discouraged, ignored[,] or failed to approve efforts to recover unpaid meal break wages."  Pl.'s Br. 6.

Defendants opposed this motion. ECF No. 18. Plaintiff's Motion is now fully briefed and ripe for disposition.

**III. APPLICABLE LAW**

The FLSA, in pertinent part, requires employers to pay overtime wages for those hours worked more than forty hours a week at a rate of "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207 (2006). A plaintiff seeking redress under the FLSA may maintain an action on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This collective action device provides "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). Moreover, collective actions benefit "[t]he judicial system . . . by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Id. Unlike a typical class action under Federal Rule of Civil Procedure 23 where plaintiffs must opt-out of the lawsuit, a collective action under the FLSA requires similarly situated plaintiffs to opt-in to the lawsuit. Id.

To manage this opt-in requirement, "district courts have discretion, in appropriate cases, to implement [] § 216(b)

6

. . . by facilitating notice to potential plaintiffs." Id. at 169. Hoffmann reasoned that district courts should control the litigation and curb potentially frivolous law suits by exercising their discretion when deciding if notice is appropriate. See id. at 172 ("Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."). This notice, when appropriate, provides potential plaintiffs the ability to fulfill the statutorily required opt-in procedure.

     Yet, this notice "is neither necessary nor sufficient for the existence of a representative action under FLSA." Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010). The key inquiry is whether the proposed opt-in plaintiffs are similarly situated so the case may proceed as a collective action. And, when determining if a plaintiff may proceed with a collective action, the Court performs a two-step analysis. See Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011); Villanueva-Bazaldua v. TruGreen Ltd. Partners, 479 F. Supp. 2d 411, 414 (D. Del. 2007); see also Bramble v. Wal-Mart Stores, Inc., No. 09-4932, 2011 WL 1389510, at *3 (E.D. Pa. Apr. 12, 2011). The first step is early in the litigation and requires the Court to determine whether the plaintiff has shown there are other plaintiffs similarly situated such that notice of the

7

collective action is proper.  Symczyk, 656 F.3d at 192; see also Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 62 (E.D. Pa. 2009).  That is, there must be some "factual nexus between [the plaintiff's situation] and the situation of other current and former [employees] sufficient to determine that they are similarly situated."  Pereira, 261 F.R.D. at 63 (internal quotation marks omitted).  The second step is after the close of discovery and is a more fact-specific inquiry into "whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff."  Symczyk, 656 F.3d at 193.  "This second stage is less lenient, and the plaintiff bears a heavier burden."  Id. (internal quotation marks omitted).

In this case, the Court is at the step-one inquiry.  Recently, the Third Circuit provided guidance to district courts when making this step-one inquiry.  See id. at 193.  The court in Symczyk resolved a split in district courts[3] and held that the

---

[3]      Before Symczyk, district courts within the Third Circuit used two different standards at the step-one inquiry.  Some cases, generally at a stage where discovery had not begun, only required the plaintiff to make a "substantial allegation" and "merely allege that the putative class members were injured as a result of a single policy of a defendant employer."  Pereira, 261 F.R.D. at 62 (internal quotation marks omitted).  In contrast, under the still-lenient "modest showing" test, "mere allegations" are insufficient; the plaintiff must submit some evidence that there are similarly situated plaintiffs.  See Bramble, 2011 WL 1389510, at *4 (quoting Williams v. Owens &

8

"'modest factual showing' standard — which works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions — best comports with congressional intent and with the Supreme Court's directive that a court 'ascertain [ ] the contours of [a collective] action at the outset.'"  Id. (alterations in original) (quoting Hoffmann, 493 U.S. at 172). With respect to whether there are "similarly situated" employees, this "modest factual showing" standard requires Plaintiff to "produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."  Id. at 193 (internal quotation marks omitted); see also Bramble, 2011 WL 1389510, at *4 (providing that "[t]he right to proceed collectively may be foreclosed where an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice" (internal quotation marks omitted)).

**IV.  DISCUSSION**

Recognizing that the "modest factual showing" standard governs Plaintiff's Motion, the Court turns to whether Plaintiff made the required showing.  Plaintiff seeks to have the Court

---

Minor, Inc., No. 09-00742, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009)).

order notice to the following proposed similarly situated plaintiffs: "[E]ach person who worked as a non-exempt, full-time employee at Ann's Choice or Maris Grove." Proposed Order, Pl.'s Br. Ex. 1. Accordingly, the Court must determine whether Plaintiff has made a modest factual showing that Defendants' policy with respect to compensation for either pre-shift or meal-break work affected other non-exempt employees in the same manner as it affected Plaintiff.[4]

### A.  Pre-shift Work

Plaintiff contends that Ann's Choice, where Plaintiff worked, required all non-exempt employees to clock in during a seven minute period before their shift began. See Pl.'s Br. 3; Holley Delc. ¶ 3; Wilcox Delc. ¶ 3.  For example, if a shift

---

[4] At the step-one inquiry, the Court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff's claims. See Pereira, 261 F.R.D. at 67 ("We cannot discount Plaintiff's evidence of such complaints by weighing them substantively with Defendant's explanations and exploring the merits of the claim."). Such inquiries are left to step two. The Court does not, however, review Plaintiff's evidence in a vacuum. It reviews Plaintiff's evidence in light of the evidence submitted by Defendants. See Bramble, 2011 WL 1389510, at *5 n.6 ("'[R]ather than rely merely on the evidence presented by the Plaintiffs, it is appropriate to examine all of the relevant evidence.'" (quoting Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004))); see also Pereira, 261 F.R.D. at 67 ("[W]hile such evidence is reviewed in assessing Plaintiff's burden to establish that he is similarly situated, such evidence is more appropriately substantively weighed pursuant to a decertification motion or a motion for summary judgment." (internal quotation marks omitted)).

began at 7:30 A.M., then all employees had to clock in between 7:23 A.M. and 7:30 A.M.  If an employee did not clock in during this time, the Kronos system would not allow the employee to clock in.  This system resulted in Plaintiff arriving to work before her scheduled shift time and Defendants giving her work to perform during this pre-shift period.  Plaintiff also contends that she had to work during her scheduled shift time without Defendants paying her for that work because Kronos did not recognize that she was on-the-clock.  Plaintiff argues that the common policy of requiring Plaintiff to arrive at work and clock in during this seven minute window, combined with Plaintiff and Wilcox's declaration providing the effects of this policy, is sufficient to meet her burden of a modest factual showing of the existence of similarly situated plaintiffs.

Defendants, on the other hand, contend that Ann's Choice did not have this seven minute clock-in policy at all.  See Defs.' Br. 8.  Defendants contend that Maris Grove has a seven-minute grace period such that an employee may arrive to work seven minutes late, but be considered on time.  Arredondo Decl. ¶ 19, Defs.' Br. Ex. A.  Similarly, an employee may leave work seven minutes early, but be considered to have finished his shift.  Moreover, Defendants provide a form for employees to fill out if the Kronos system has not clocked an employee in

11

when she arrived.  See Timecard Change/Missed Punch/Missed Meal Break, Defs.' Br. Ex. I.

In this case, Plaintiff fails to make the required modest factual showing vis-à-vis her proposed sub-class of pre-shift work claims.  To be sure, Plaintiff has modestly shown facts – given the alleged common policy and declarations of Plaintiff and Wilcox – that other non-exempt employees at Ann's Choice are similarly situated for the pre-shift work claims.  The Court cannot make the same conclusion regarding pre-shift work at Maris.  Plaintiff provides no documentary or other evidence that the policy allegedly in practice at Ann's Choice that prevented payment for pre-shift work was in effect at Maris.  Indeed, Plaintiff provides no evidence regarding the clock-in procedure at Maris or otherwise discusses Maris's seven-minute grace period.[5]  The Court will not ignore Defendants' evidence given the absence of any evidence provided by Plaintiff with respect to Maris.

Under these circumstances, the Court will deny Plaintiff's Motion without prejudice because her requested

---

[5]   Both Plaintiff and Wilcox were employed at Ann's Choice and both declarations are virtually identical.  Neither declarant was employee at Maris, or provides any detail of a blanket policy at both Ann's Choice and Maris of this seven-minute window.  Therefore, the Court cannot conclude that there is a modest factual showing that other employees performed pre-shift work at Defendants' Maris facility.

notice is too broad to encompass her specific claim of failure to compensate for pre-shift work at both Ann's Choice and Maris. See Williams v. Securitas Sec. Servs. U.S.A., Inc., No. 10-7181, 2011 WL 3629023, at *4 (E.D. Pa. Aug. 17, 2011) (holding that declarations only indicated that pre-shift work occurred at certain locations and that this was fatal to plaintiff's conditional certification for all locations); see also Camesi v. Univ. of Pittsburgh Med. Ctr., No. 09-85J, 2009 WL 1361265, at *3 (W.D. Pa. May 14, 2009) (allowing conditional certification for health workers in different facilities where defendant had written blanket policy of deducting time for meal breaks). Plaintiff may reconstruct the notice, submit competent evidence to the Court, or modify the proposed collective group to conform to the evidence. Plaintiff may file a revised notice, if appropriate.

B. Meal-break Work

Plaintiff's Complaint also alleges that Defendants failed to properly compensate Plaintiff for meal-break work. Specifically, Plaintiff argues that the Kronos system deducts thirty minutes automatically from Plaintiff's hours worked, regardless of whether or not she worked during her meal break. Plaintiff contends that she never received her meal break for her three years of employment with Defendants, and Defendants

did not compensate Plaintiff for this time.  Similarly, Wilcox contends that she did not receive her meal break about four times per week and was similarly uncompensated for some of this time.[6]

It is undisputed that the Kronos system does, at both Ann's Choice and Maris, deduct thirty minutes for lunch break for certain non-exempt employees, regardless of whether or not that employee works during her meal break.  <u>See</u> Arredondo Decl. ¶ 7, Defs.' Br. Ex. A.  Indeed, Defendants' employee handbook indicates that all employees have thirty minutes of unpaid meal break.  <u>See</u> Hours of Work and Paydays, Pl.'s Br. Ex. C.  The only employees that must clock in and out for the meal break are those employees under eighteen years old.  <u>See</u> <u>id.</u> ("Employees under 18 must punch in and out for their thirty-minute break to validate that they have actually taken their break.").  This common policy is sufficient at this step-one inquiry to conclude that the automatic deduction policy affected all non-exempt employees, except those under eighteen years old, at both Ann's Choice and Maris.

---

[6] Defendants provide evidence that Wilcox filled out the appropriate meal-break reimbursement form on several occasions. <u>See</u> Defs.' Br. Ex. O.  But, Defendants do not provide nearly all the forms to cover Wilcox's alleged four days a week of meal-break work for her approximately one-and-one-half years of employment.

Defendants argue that the following non-exempt employees do not have time automatically deducted from their pay: security, transportation, and communications department employees. Beauchamp Decl. ¶ 9, Defs.' Br. Ex. B. There is no documentary evidence submitted to the Court to confirm this exclusion. Therefore, as this is contradictory to Plaintiff and Wilcox's declarations, the Court will not make a factual determination over whether these employees should not be included within the notice of collective action at this preliminary stage.

Defendants also argue that Plaintiff's notice vis-à-vis meal-break work sweeps too broadly. Specifically, Defendants argue that Plaintiff's notice should be limited to only nurses employed at Ann's Choice because there are numerous non-exempt employees at Ann's Choice and Maris that have different job functions that may not result in unpaid meal-break work. See Defs.' Br. 8 (providing job descriptions of other employees and suggesting that because job descriptions differ that all employees are not similarly situated). Therefore, Defendants argue, Plaintiff's proposed notice sweeps too broadly to encompass employees that may not have worked during meal break and also employees that did not have time automatically deducted.

Defendants provide the Court with no documentary evidence that all employees, except for those under eighteen years old, do not have their meal-break time automatically deducted.  All they provide is a declaration that Plaintiff and Wilcox's declarations contradict.  The Court will not weigh this contradictory evidence.  Plaintiff's proffered declarations, along with the documentary evidence that Defendants had a blanket policy of a thirty minute unpaid meal break that was automatically deducted from each employee's pay, are sufficient for conditional certification of Plaintiff's collective action for employees over eighteen years old at both Ann's Choice and Maris for Plaintiff's meal-break work claim.[7]  See O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 585 (6th Cir. 2009) ("[P]roof of a violation as to one particular plaintiff does not prove that the defendant violated any other plaintiff's rights under the FLSA.  Nevertheless, the plaintiffs are 'similarly situated' according to § 216(b).").

---

[7]  Defendants argue that the factual dissimilarities between potential class plaintiffs should preclude the Court from conditionally certifying the collective group.  While Defendants may ultimately prevail on the merits, conditional certification under the "modest factual showing" standard is permissive.  Should this case proceed to step two of the certification inquiry, the Court will perform a more searching analysis into whether certification of the collective action is appropriate.  See Symczyk, 656 F.3d at 192.

In sum, under these circumstances, Plaintiff has shown a sufficient factual nexus for the Court to conclude that notice to similarly situated persons should be granted to employees over eighteen years old at both facilities for Plaintiff's meal-break work claim.[8]  See Camesi, 2009 WL 1361265, at *3 (allowing conditional certification for health workers in different facilities where defendant had written blanket policy of deducting time for meal breaks); see also Lindberg v. UHS of Lackside, L.L.C., 761 F. Supp. 2d 752, 759-60 (W.D. Tenn. 2011) (collecting cases granting conditional certification for auto deduction policies); Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 206-07 (N.D.N.Y. 2009) (recognizing burden is upon employer to ensure employees are compensated for meal-break work, and that employer must "police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated").

---

[8]   Defendants argue, and Plaintiff concedes, that Defendants had a remedy to this meal-break work.  An employee could fill out a reimbursement form for any time worked during the thirty-minute meal break.  See Timecard Change/Missed Punch/Missed Meal Break, Defs.' Br. Ex. I.  Plaintiff argues that Defendants required an employee to submit this form within twenty-four hours of the missed work break and that Defendants rarely granted the reimbursement.  The Court need not resolve this dispute at this preliminary stage, however, as it is best left to the more searching step-two inquiry.

17

    C.   <u>Notice to Similarly Situated Plaintiffs</u>

While the Court concludes that Plaintiff showed there are sufficiently similar plaintiffs with respect to her claim for meal-break work at both Ann's Choice and Maris for employees over eighteen years old, the Court will deny Plaintiff's Motion without prejudice. First, as explained above, Plaintiff's Complaint alleges there are two sub-classes of plaintiffs, pre-shift work and meal-break work at both Ann's Choice and Maris. Plaintiff's proposed notice encompasses both sub-classes at both Ann's Choice and Maris. As the Court concludes that Plaintiff failed to make the modest factual showing necessary to provide notice for the pre-shift sub-class at both facilities, and Plaintiff's notice would reach plaintiffs at both facilities, Plaintiff's proposed notice is too broad.

Second, unlike Plaintiff's claim for pre-shift work, Plaintiff showed similarly situated plaintiffs at both Ann's Choice and Maris. Nevertheless, Plaintiff's proposed class with respect to meal-break work is still too broad because it encompasses employees that must clock in and clock out for meal break. Defendants' documentary evidence demonstrates that all proposed plaintiffs younger than eighteen years old should not be part of Plaintiff's proposed collective action. Defendants' handbook explicitly states that all persons younger than eighteen years old must clock in and clock out for meal breaks.

See Hours of Work and Paydays, Pl.'s Br. Ex. C ("Employees under 18 must punch in and out for their thirty-minute break to validate that they have actually taken their break."). Consistent with the Court's gate-keeping role for providing notice under Hoffman, the clock-in-clock-out requirement for employees under eighteen years old precludes the Court, absent some other factual showing by Plaintiff, from allowing notice to be sent to all non-exempt employees. Proposed plaintiffs younger than eighteen years old simply have no claim, based upon Plaintiff's alleged facts, to unpaid wages for meal-break work.[9] Accordingly, the Court will deny Plaintiff's Motion without prejudice. Plaintiff may file a revised notice, if appropriate.

---

[9] Plaintiff argues that Defendants have not "produced any discovery supporting their use of appropriate timekeeping practices with regard to non-exempt employees under 18 years of age." Pl.'s Reply Br. in Supp. of Mot. Authorizing Notice to Similarly Situated Persons n.3, ECF No. 20 [hereinafter Pl.'s Reply Br.]. Yet, Plaintiff fails to make a factual showing as to these particular proposed plaintiffs given the clear documentary evidence that employees under eighteen years of age must clock in and clock out. The Court is not weighing the evidence here, but viewing Plaintiff's "evidence" of a conclusory statement that the automatic deduction policy applies to all employees in light of the documentary evidence that Plaintiff herself submitted that contradicts her own statement. See Bramble, 2011 WL 1389510, at *5 n.6. To the extent that Plaintiff can put forth some specific facts that align these under-eighteen employees with Plaintiff's claims, Plaintiff may do so if she chooses to re-file her motion for conditional certification.

**V.    CONCLUSION**

For the reasons set forth above, the Court will deny Plaintiff's Motion Authorizing Notice to Similarly Situated Persons without prejudice.  An appropriate order will follow.